Appeal No. 24-1594

---

# United States Court of Appeals
# For the Third Circuit

---

ANDY KIM, et al.,

*Plaintiffs-Appellees*,

v.

CHRISTINE GIORDANO HANLON, in her capacity as Monmouth County Clerk, et al.,

*Defendants-Appellants*.

---

On Appeal from an Interlocutory Order of
the United States District Court for the District of New Jersey
Case No. 3:24-cv-01098-ZNQ-TJB
District Judge: Honorable Zahid N. Quraishi

---

## REPLY BRIEF OF APPELLANT
## CAMDEN COUNTY DEMOCRATIC COMMITTEE

---

Dated:  April 10, 2024

William M. Tambussi, Esq.
Alyssa I. Lott, Esq.
**BROWN & CONNERY, LLP**
360 Haddon Avenue
Westmont, New Jersey 08108
Phone: (856) 854-8900
Fax: (856) 858-4967
Email: wtambussi@brownconnery.com
Email: alott@brownconnery.com
*Attorneys for Appellant,*
*Camden County Democratic Committee*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................... ii

ARGUMENT ............................................................................................1

I.     THE DISTRICT COURT ERRED IN GRANTING
       THE INJUNCTION AS THE BURDENS ON
       PLAINTIFFS ARE NOT SEVERE AND IN
       BALANCING THE EQUITIES..............................................................1

       A. Previous Decisions Upholding the Constitutionality of the Challenged
          Statutes are Well Reasoned and Should be Followed....................1

       B. The Statutes Are Applied in a Nondiscriminatory Manner .................3

       C. The District Court Erred in Finding that the
          State's Interests Were Not Compelling ................................................6

II.    THE DISTRICT COURT ERRED IN FINDING
       THAT, ON BALANCE, THE HARMS THAT
       PLAINTIFFS WOULD SUFFER EXCEED
       THE HARM OF INTERESTED PARTIES
       ABSENT AN INJUNCTION .................................................................15

III.   THE DISTRICT COURT ERRED IN
       FINDING THAT THE PUBLIC INTEREST
       FAVORS AN INJUNCTION.................................................................19

IV.    CCDC HAS A RIGHT TO APPEAL THE
       DISTRICT COURT'S ORDER GRANTING
       THE INJUNCTION..............................................................................21

CONCLUSION ......................................................................................25

CERTIFICATE OF BAR MEMBERSHIP .............................................26

CERTIFICATE OF COMPLIANCE......................................................27

CERTIFICATE OF SERVICE .......................................................... ......28

i

# TABLE OF AUTHORITIES

## Federal Cases

*Am. Party of Tex. v. White,*
 415 U.S. 767 (1974) ................................................................. 18

*Diamond v. Charles,*
476 U.S. 54 (1986) ................................................................... 22

*Doe v. Reed,*
561 U.S. 186 (2010) ................................................................. 19

*Chadwick v. Janecka,*
302 F.3d 107 (3d Cir. 2002) ..................................................... 22

*Citizens Against Rent Control/Coalition
to Fair Housing v. Berkeley,*
 454 U.S. 290 (1981) ................................................................. 16

*Democratic-Republican Org. v. Guadagno,*
900 F.Supp.2d at 456,
*aff'd* , 700 F.3d 130 (3d Cir. 2012) ............................... 3, 4, 20

*Eu v. S.F. Cty. Democratic Cent. Comm.,*
489 U.S. 214 (1989) .............................................................. 7, 16

*McLaughlin v. Pernsley,*
876 F.2d 308 (3d Cir. 1989) ..................................................... 22

*Mazo v. N.J. Sec'y of State*
54 F.4th 124 (3d Cir. 2022),
*cert. denied*, 144 S. Ct. 76 (2023) ............................................. 5

*N.Y. State Bd. of Elections v. Lopez Torres,*
552 U.S. 196 (2008) ................................................................... 5

*Seneca Res. Corp. v. Twp. of Highland,*
863 F.3d 245 (3d Cir. 2017) ..................................................... 22

*Storer v. Brown,*
  415 U.S. 724 (1974) ................................................................ 20

*Tashjian v. Republican Party,*
  479 U.S. 208 (1986) .................................................................. 7

*Timmons v. Twin Cities Area New Party,*
  520 U.S. 351 (1997) ................................................................ 20

*Valenti v. Mitchel,*
  962 F.2d 288 (3d Cir. 1992) ..................................................... 20

*Williams v. Rhodes,*
  393 U.S. 23 (1968) ................................................................... 17

## STATE CASES

*Andrews v. Rajoppi,*
  2008 N.J. Super. Unpub. (App. Div. Apr. 29, 2008) ................... 1

*Caltabiano v. Gill,*
  449 N.J. Super. 331 (App. Div. 2017) ....................................... 1

*Quaremba v. Allan,*
  67 N.J. 1 (1975) ....................................................................... 1

*Schundler v. Donovan,*
  377 N.J. Super. 339, 348 (App. Div. 2005). ....................... 2, 5

## STATUTES

N.J.S.A. 19:1-1 ........................................................................ 23

N.J.S.A. 19:5-3.2 ..................................................................... 23

N.J.S.A. 19:23-24 ...................................................................... 1

N.J.S.A. 19:49-2 ........................................................................ 1

## ARGUMENT

### I.  THE DISTRICT COURT ERRED IN GRANTING THE INJUNCTION AS THE BURDENS ON PLAINTIFFS ARE NOT SEVERE AND IN BALANCING THE EQUITIES.

#### A.    Previous Decisions Upholding the Constitutionality of the Challenged Statutes are Well Reasoned and Should be Followed.

Plaintiffs offer no argument to refute the long-standing state court precedent upholding the constitutionality of the challenged statutes, other than to say that the state court opinions are "stale" and "misguided."  *See* Opp. Br. at 32. However, neither *Quaremba* nor *Schundler* have been overturned and are controlling state law. Indeed, both cases have been subsequently relied upon, with both *Quaremba* and *Schundler* being cited in the Appellate Division case *Andrews v. Rajoppi*, 2008 N.J. Super. Unpub. LEXIS 1111 (App. Div. Apr. 29, 2008) and *Schundler* being cited in the Appellate Division case *Caltabiano v. Gill*, 449 N.J. Super. 331 (App. Div. 2017).  Neither case is "stale" nor "misguided".

More importantly, *Quaremba* involved challenges to the constitutionality of N.J.S.A. 19:49-2 and N.J.S.A. 19:23-24.  67 N.J. 1, 7 (1975).  In finding that there was no merit to any of plaintiffs' constitutional arguments, the New Jersey Supreme Court recognized that "there can be no doubt about the authority of the Legislature to adopt reasonable regulations for the conduct of primary and general elections [and] [s]uch regulations, of course, may control the manner of preparation of the ballot, so long as they do not prevent a qualified elector from exercising his

constitutional right to vote for any person he chooses." *Id.* at 11.  The Court found that the statute was not discriminatory, noting "[n]othing in the challenged section inhibits any voter from voting for any person he chooses or limits the right of any candidate to run for office." *Id.*

In *Schundler*, which concerned the review of a trial court's order approving the court clerks' redrawing for ballot positions, the Appellate Division found that there was nothing in the statute that conflicts with the overriding principle of *Eu*, and that "there can be no rights violation where a county clerk makes a fair effort to follow the dictate that all candidates for the highest office, *i.e.*, U.S. Senator or Governor, be treated equally to the extent physical constraints allow, as long as, at the same time, a good faith effort is made to effect the expressive rights of all candidates." *Schundler v. Donovan*, 377 N.J. Super. 339, 348 (App. Div. 2005).

Both *Quaremba* and *Schundler* confirm that there can be no constitutional violation where there is equal access and equal treatment among candidates. Plaintiffs are not denied access to the ballot.  The legislative framework does not infringe upon Plaintiffs' constitutional rights.  The district court erred in failing to follow the reasoning of the New Jersey state court rulings upholding the constitutionality of New Jersey's bracketing system.

Plaintiffs' repeated attempts to backdoor the personal opinion of the New Jersey Attorney General in this case, which the district court specifically refused to

consider since the Attorney General is not a party to this litigation ought not be countenanced.   Plaintiffs cannot ask this Court to consider the opinion of the non-party State Attorney General, while simultaneously asserting that this Court should disregard the opinions of the New Jersey Supreme Court and the Appellate Division Court.   This Court ought not accord any weight to the opinion of the non-party Attorney General.

### B.    The Statutes Are Applied in a Nondiscriminatory Manner.

The district court erred in finding that the alleged burdens on Plaintiffs' First Amendment rights are severe.   *See* ECF No. 194, at 32.   Plaintiffs have not been denied access to the ballot and the statutes are applied in a nondiscriminatory manner.   Plaintiffs' alleged burdens are incidental at best requiring only a reasonable state interest to uphold the statutes' constitutionality.

Plaintiffs' complaint is not that they have been denied access to the ballot or that voters have been restricted in their ability to vote for Plaintiffs.   Rather, Plaintiffs' complaint concerns primary ballot placement and that there are some perceived advantages to candidates who obtain first position on the primary ballot.   However, the district court in *Democratic-Republican Org. v. Guadagno*, which was substantially affirmed by the Third Circuit, rejected a request for emergent relief following a challenge to New Jersey's statutes regarding ballot placement and acknowledged the distinction between ballot access and ballot placement:

> Ballot access is recognized as an important aspect of voting rights . . . and it cannot be argued that placement on the ballot is more important than access to the ballot because placement is irrelevant without access. Thus, it necessarily follows that if a candidate's ballot access can be regulated by the state . . . a candidate's ballot placement can also be regulated, as placement is surely a less important aspect of voting than access.

900 F.Supp.2d at 456, *aff'd*, 700 F.3d 130 (3d Cir. 2012) (internal citations omitted).

The district court in *Democratic-Republican Org.* ultimately held that "placing political party candidates on the left side of the ballot and all other candidates on the right side . . . does not violate Plaintiffs' constitutional rights." *Id.* at 459. At most, as the district court ruled, these statutes impose "a minimal burden on Plaintiffs' ballot access . . . Because the Plaintiffs' burden, if any, is negligible, any reasonable regulatory interest provided by the State will ensure the statutes' constitutionality . . . ." *Id.*

Similarly, here, Plaintiffs' challenge relates solely to primary ballot placement, which has been described as "a less important aspect of voting than access." *Id.* at 456. Plaintiffs have not been denied access to the primary ballot. Nor have voters been denied the opportunity to vote in the primary for Plaintiffs. Thus, like *Guadagno*, Plaintiffs' alleged burdens, at best, are minimal or incidental, requiring only a reasonable interest to justify the constitutionality of the statutes. Ballot bracketing is a logical and important extension of ballot slogans. Just as the

ballot slogans have been upheld as constitutional, the ability to bracket with candidates on the ballot is as well. *See Mazo v. N.J. Sec'y of State*, 54 F.4th 124 (3d Cir. 2022), *cert. denied*, 144 S. Ct. 76 (2023).

Plaintiffs do not have a constitutional right to appear in first position on a primary ballot. All that is required is equal treatment, which is afforded here. Any alleged advantage conferred to a candidate who obtains first position on the primary ballot because of the "luck of the draw" is not a constitutional injury that can be redressed through the First Amendment. As recognized in *Schundler*:

> Of course, the very notion of drawing for ballot position suggests that some candidates will have an advantage over others. Yet, that inequality seems inherent in the nature of the situation; we can discern no way of remedying the type of inequality that comes from 'the luck of the draw.'"

*Schundler*, 377 N.J. Super. at 349; *see also N.Y. State Bd. of Elections v. Lopez Torres*, 552 U.S. 196, 205-06 (2008) ("None of our cases establishes an individual's constitutional right to have a 'fair shot' at winning the party's nomination . . . . What constitutes a 'fair shot' is a reasonable enough question for legislative judgment, which we will accept so long as it does not too much infringe upon the party's associational rights.").

Because Plaintiffs have not been denied access to the ballot, there is simply no severe burden on their First Amendment freedom to not associate. Any alleged burden on their First Amendment rights due to primary ballot placement is incidental

at best and can be justified by any reasonable interest advanced by the State, as set forth below.  The district court's finding that Plaintiffs face a severe burden when there is equal access to the primary ballot, and equal opportunity regardless of bracketing status, was error and requires reversal.

### C.     The District Court Erred in Finding that the State's Interests Were Not Compelling.

Plaintiffs argue that CCDC and Defendant Clerks did not put on any evidence to support their alleged State interests and did not provide expert reports or witnesses establishing that the bracketing and ballot placement statutes furthered any legitimate state interests.  *See* Opp. Br. at 26.  Because the statutes, at best, have an incidental burden on the associational rights of candidates, the evidential burden on CCDC and Defendant Clerks was satisfied through admissions by Plaintiffs' witnesses in direct testimony and cross-examination.

Due to the time constraints brought about by the timing of the Plaintiffs' filing and the limits imposed at the March 18, 2024 hearing, CCDC did not have a reasonable opportunity to fully explore the flaws in the Plaintiffs' experts' opinions. Indeed, on February 29, 2024, CCDC sought to participate in a telephonic conference with the Court related to Plaintiffs' Motion for Preliminary Injunction, but was denied by the district court, with CCDC directed to file a motion to intervene.  *See* ECF No. 30.  The district court further acknowledged at the Preliminary Injunction hearing that it "didn't let [CCDC] on my phone call until it

granted [the motion to intervene]." It was not until March 14, 2024 – the Thursday before the Monday Preliminary Injunction hearing – that CCDC's motion to intervene was granted. *See* ECF No. 121. As such, given the time constraints, CCDC was unable to present expert testimony to refute the opinions of Plaintiffs' experts, let alone allow such experts a reasonable opportunity to analyze the relevant data. The suggestion that CCDC should have retained, consulted with, and obtained formal written opinions from experts in four-days' time when Plaintiffs had months to prepare this litigation is untethered to reality.

A state has a compelling interest in preserving the integrity of its election process. *Eu v. S.F. Cty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989). States also have "legitimate interests in preventing voter confusion and providing for educated and responsible voter decisions." *Tashjian v. Republican Party*, 479 U.S. 208, 221-22 (1986). States also have a legitimate interest in protecting the associational rights of political parties. *See Eu*, 489 U.S. at 224. The interest in ensuring that a ballot is designed in a manner by which voters can readily identify the candidates that align with their ideologies and preferences is inextricably intertwined with the State's interest in preserving the integrity of its election process. New Jersey's legislative framework maintains these interests while also affording candidates equal access to the ballot and an equal opportunity to draw for primary ballot position in a nondiscriminatory manner.

Plaintiffs rely on the opinions of political theorists, namely Dr. Pasek and Dr. Wang, who disregard all variables in their political experiment <u>except</u> the one that supports their predetermined narratives and conclusions.  Plaintiffs contend that the reports of Dr. Pasek and Dr. Wang explain how the ballot uses visual cues that "nudge" voters toward candidates on the county line.  However, Dr. Pasek and Dr. Wang rely only on ballot placement and ballot design and ignore incumbency, personal recognition and popularity, status in the community, and financial backing, to name a few factors, to arrive at the conclusions in their "experimental" surveys. *See* Transcript of Preliminary Injunction Hearing, at 315:20-329:10, 331:25-332:15; *see also Lopez Torres*, 552 U.S. at 205 ("But this says nothing more than that the party leadership has more widespread support than a candidate not supported by the leadership.").  These factors, among others, influence voter behavior, which none of Plaintiffs' experts considered in their "experimental" surveys. *Id.*  Given the time constraints resulting from Plaintiffs' filing and the limits imposed at the preliminary injunction hearing, CCDC was hindered in its ability to identify all of the fallacies in Plaintiffs' experts' opinions.  Nonetheless, as Plaintiffs' experts conceded, the only factor considered by Plaintiffs' experts was the one factor that supports Plaintiffs' narrative. The failure by Plaintiffs' experts to consider other factors demonstrates the weakness in the foundation of Plaintiffs' entire argument.

The district court erred in imposing a radical change in ballot construction without a full opportunity to challenge the "science" of Plaintiffs' experts. The district court's acceptance of experimental surveys by Plaintiffs' experts which ignore all variables related to voting except one was error. Plaintiffs here do little to overcome the glaring fact that none of Plaintiffs' experts opined as to how any variable, other than ballot placement, could influence voter behavior or how a radical change in the ballot could contribute to voter confusion or lead to voter disenfranchisement. The district court's willingness to accept such flawed opinions led to its imposition of the injunction and must be reversed.

Plaintiffs assert that candidates who share common beliefs and want to be associated with one another and express such association on the ballot will continue to have that ability. Yet, Plaintiffs disregard the fact that such associations are not communicated to voters in an organized and intelligible way. The ballots as currently designed enable voters to identify the candidates that best represent their ideologies because the ballots are constructed in a manner that groups candidates by political party faction affiliation. An office-block ballot does not provide the electorate with a firm understanding of the candidates that make up the political association as there is no manner in which candidates can be grouped together on an office-block ballot under the terms of the district court's order. A review of proposed Camden County ballots featuring a "county line" and an office-block ballot

9

underscores the importance of utilizing a ballot that is most readily understandable to voters.

Below is an example of a ballot featuring a "county line":

| OFFICE TITLE | Democrat | Democrat | Democrat | Democrat | Democrat | Democrat | Democrat | WRITE-IN |
|---|---|---|---|---|---|---|---|---|
| **Choice For President** (Vote for One) / Presidente de los Estados Unidos — A vote for the President is an automatic vote for all affiliated delegates to the Democratic National Convention / Un Voto por el Presidente es automáticamente un voto a los Delegados afiliados para la Convención Nacional Democrática | South Jersey Progressive Democrats — Patricia CAMPOS-MEDINA ○ | | | | Camden County Democratic Committee Inc — Joseph R BIDEN, JR. ○ (…AFRIQUE / …KEY / …STYLES) | Tamara BILIK OVYNIAC ○ | UNCOMMITTED ○ (Justice For Palestine, Permanent Ceasefire Now / …STEFANOSKI / …STRONG) | ○ |
| **United States Senator** (Vote For One) / Senador de los Estados Unidos — United States Senator / Senador de los Estados Unidos | | | NJ Democratic Team — Andy KIM ○ | | | | | ○ |
| **Member of the House of Representatives** (Vote For One) / Miembro de la Cámara de Representantes — Member of the House of Representatives / Miembro de la Cámara de Representantes | | Purple Heart First — Lawrence HAMM ○ | | | Camden County Democratic Committee Inc — Donald NORCROSS ○ | | | ○ |
| **Sheriff** (Vote For One) / Alguacil | South Jersey Progressive Democrats — Raimon HOLLOWAY ○ | | | | Camden County Democratic Committee Inc — Chuck BILLINGHAM ○ | | | ○ |
| **County Clerk** (Vote For One) / Secretario del Condado | South Jersey Progressive Democrats — Kyle IRWIN ○ | | | | Camden County Democratic Committee Inc — Pamela LAMPITT ○ | | | ○ |
| **Members of the Board of County Commissioners** (Vote For Three) / Miembros de la Junta de Comisionados del Condado — Member of the Board of County Commissioners / Miembro de la Junta de Comisionados del Condado | South Jersey Progressive Democrats — Susan DRUCKENBROD ○ | | | | Camden County Democratic Committee Inc — Jeffrey L. NASH ○ / …AI OTHER ○ / Melinda KANE ○ | | | ○ ○ ○ |
| **Member of Council** | South Jersey Progressive Democrats — Stan CURTIS ○ | | | | | | | |
| **Members of Council** (Vote For Two) / Miembros del Consejo — Member of Council / Miembro del Consejo | | | | | Camden County Democratic Committee Inc — Christopher MORGAN ○ / Camden County Democratic Committee Inc — Kathryn RUSSO ○ | | | ○ ○ |

ED/EV   Haddon Heights District 1

As can be seen, in Column 4, all of the candidates that constitute CCDC's association are readily identifiable in an organized way. This association is easily communicated to voters in an intelligible manner by grouping all of the individuals that constitute CCDC's association under the same slogan, together, down the column on the ballot. This design, and the legislative framework that enables it, appropriately strikes the balance between protecting the constitutional rights of political party organizations while affording candidates equal access to the ballot and equal opportunity to draw for ballot position in a nondiscriminatory manner. It also minimizes voter confusion.

Conversely, an office-block ballot, as suggested by Plaintiffs and ordered by the district court, does not protect the constitutional rights of political party organizations because it does not permit CCDC to communicate the individuals that constitute its association in an organized and intelligible way. Below is a sample ballot utilizing an office-block ballot design:



In this format, the individuals that constitute CCDC's association are not identifiable in an organized and intelligible way to voters, such as being grouped together in the same row or column. An office-block ballot does not effectively inform voters of the group of candidates that share their ideologies and beliefs. This creates voter confusion.

Nor does an office-block ballot provide any ballot symmetry that could inform voters of the individuals that CCDC endorses for nomination. For example, in the office-block ballot, the candidate endorsed by CCDC is first listed in the box for the Choice for President, the second listed in the box for County Clerk, and the second, fourth, and fifth listed in the box for Board of County Commissioners. It cannot be assumed that because the CCDC candidate for President is listed in the first position, the CCDC candidate will likewise be listed in the first position for the remaining choices for office. This becomes especially confusing for voters when there are multiple candidates running for the same office that are endorsed by CCDC, like the position for County Commissioner. Typically, these individuals would all be bracketed together in the same column under the same slogan. Here, in the office-block ballot above, the names of the candidates are scattered in the second, fourth, and fifth positions in the boxes for County Commissioner because the district court's order does not permit them to be grouped together in the same column under the same slogan.

The office-block ballot is a more complicated and less understandable ballot, which makes it more difficult for voters to identify the candidates that align with their ideologies and preferences.  There is no organized or intelligible way for political party organizations to group together the candidates that constitute their association.  Adopting an office-block ballot, in the context of a party primary, without discovery, without a full plenary hearing on the impact of the change in design, and without the opportunity to educate the electorate in a presidential election year on a radically changed ballot will lead to voter confusion and potentially voter disenfranchisement.  The district court erred in finding that the State's interest to prevent voter confusion and to educate the electorate, as well as its interest in protecting the associational rights of political party factions, on a changed ballot design was not "especially compelling."

## II.    THE DISTRICT COURT ERRED IN FINDING THAT, ON BALANCE, THE HARMS THAT PLAINTIFFS WOULD SUFFER EXCEED THE HARM OF INTERESTED PARTIES ABSENT AN INJUNCTION.

The district court erred in finding that the alleged harm Plaintiffs would suffer absent an injunction exceeds the harm to other interested parties, such as CCDC, should the injunction be granted.  Plaintiffs argue that this case does not challenge the ability to endorse candidates or the provisions of New Jersey law allowing candidates to be featured on the ballot with a common slogan.  But, CCDC's harm to its associational rights is self-evident.  In reviewing the ballots above, CCDC is

harmed in having a radical change in its ability to fully express its association in a manner that best identifies its endorsed candidates to the voters.

CCDC's freedom to associate encompasses more than ability to identify candidates under a common slogan.  In *Eu*, the Supreme Court recognized that "partisan political organizations enjoy freedom of association protected by the First and Fourteenth Amendments," and this "means not only that an individual voter has the right to associate with the political party of her choice . . . , but also that a political party has a right to 'identify the people who constitute the association' . . . and to select a 'standard bearer who best represents the party's ideologies and preferences.'"  *Eu*, 489 U.S. at 224 (internal citations omitted).   The Court further stated:

> Even though individual members of the state central committees and county central committees are free to issue endorsements, imposing limitations 'on individuals wishing to band together to advance their views on a ballot measure, while placing none on individuals acting alone, is clearly a restraint on the right of association.'"

*Id.* at 224-25 (quoting *Citizens Against Rent Control/Coalition to Fair Housing v. Berkeley*, 454 U.S. 290, 296 (1981)).

The associational rights of political party organizations extend well beyond issuing an endorsement or identifying a shared slogan on the ballot.  *Eu* makes clear that political party organizations have the right to not only endorse and identify candidates that share their ideologies and preferences, but to group the candidates in

a manner that informs voters of the individuals who constitute the association to advance their shared interests, even on an office-block ballot. Here, the injunction hampers CCDC's ability to identify together on an office-block ballot the individuals who constitute its association, and to communicate that association to voters, while placing no similar restrictions on the candidates who choose not to be affiliated with any other candidates and elect against bracketing. Thus, unbracketed candidates not associated with a political party organization are provided an unfair advantage, and voters will not be sufficiently informed of the individuals who constitute the association and share similar ideologies and preferences of those who choose to bracket. Imposing limitations on political party organizations who wish to band together while imposing no restrictions on individuals acting alone is a restraint on a political party organization's freedom of association.

CCDC is further harmed by the district court limiting its injunction to the 2024 Democratic Primary as it gives rise to equal protection concerns as to the treatment of political parties and political party organizations. "No State can pass a law regulating elections that violates the Fourteenth Amendment's command that 'No State shall . . . deny to any person . . . the equal protection of the laws.'" *Williams v. Rhodes*, 393 U.S. 23, 29 (1968). "The Equal Protection Clause does not make every minor difference in the application of laws to different groups a violation of our Constitution. But [the Court] ha[s] held many times that 'invidious' distinctions

cannot be enacted without a violation of the Equal Protection Clause." *Id.* at 30. To assert an equal protection violation, a party must demonstrate "a discrimination against them of some substance." *Am. Party of Tex. v. White*, 415 U.S. 767, 781 (1974).

The district court's order implicates equal protection concerns because it limits the scope of the injunction to the 2024 Democratic Primary only. On March 30, 2024, the district court clarified that the "preliminary injunction granted in this case is, and must be, limited to the 2024 Democratic Primary Election," and "decline[d] to extend the scope of its decision beyond the limitations of the present litigation." *See* ECF No. 207. As a result, Democratic political party organizations such as CCDC are restricted in their ability to freely associate with Democratic candidates in the primary and to communicate that association to the voters in a manner that readily identifies the individuals who constitute the association through the use of a ballot that features a "county line" and instead are required to utilize a ballot design that provides no guidance on how to communicate their associations. Conversely, Republican political party organizations are not limited in their abilities to freely associate with candidates through use of the "county line" ballot design, which communicates, in a more intelligible and organized way, the candidates these organizations align and associate with. The distinction between political party

factions and the unequal treatment in their ability to exercise their freedom to associate warrants reversal.

Contrary to Plaintiffs' assertions, CCDC understands that Congressional candidates like Schoengood and Rush cannot draw the first or prime ballot position in a year where the U.S. Senate and/or New Jersey Gubernatorial elections occur. Nor can those candidates draw the first or prime ballot position under the office box scheme unless the Plaintiffs are also proposing that each office box for each office be given the opportunity to draw for the first or prime position. However, the scant "evidence" of harm that Schoengood and Rush would allegedly suffer cannot overcome the severe impairments of CCDC's constitutionally-protected freedom of association – particularly when the experts replied upon by Plaintiffs to demonstrate such alleged harm to Plaintiffs ignored all other variables that influences voter behavior except for the variable that supports the experts' opinions. Harm results to CCDC by a drastic change in its ability to fully express its association rights in a manner that best identifies to the voters its endorsed candidates and the individuals that share its ideologies and preferences.

## III.    THE DISTRICT COURT ERRED IN FINDING THAT THE PUBLIC INTEREST FAVORS AN INJUNCTION.

"The State's interest in preserving the integrity of the electoral process is undoubtedly important." *Doe v. Reed*, 561 U.S. 186, 197 (2010).  The Supreme Court has recognized that, "as a practical matter, there must be a substantial

regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process[].” *Valenti v. Mitchel*, 962 F.2d 288, 301 (3d Cir. 1992) (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)). Indeed, “the State has an interest in regulating elections to ensure that voters are able to understand the ballot[.]” *Democratic-Republic Org.*, 900 F. Supp. 2d at 456. Here, the district court’s order does not advance the public interest because it significantly impacts the integrity of the electoral process and the orderly administration of elections.

There has been no opportunity to determine how political party organizations like CCDC can fully express their association in a manner that best identifies its endorsed candidates to the voter in an organized and intelligible way on an office-block ballot. Further, a change in ballot construction without the opportunity to educate the electorate on the radically changed ballot is against the public interest. As illustrated by the sample ballots, it is likely that the change in ballot design will lead to voter confusion and overvoting on mail in ballots. A disorganized and unintelligible ballot can lead to disenfranchisement, especially if voters cannot identify the candidates they align with and who share their common ideologies and preferences on an office-block ballot.

States can enact regulations to ensure orderly elections. *See Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) (“States may, and inevitably must,

enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder."). And States should be free to do so without unnecessary government interference. As recognized in *Lopez Torres*:

> The States can, within limits (that is, short of violating the parties' freedom of association), discourage party monopoly—for example, by refusing to show party endorsement on the election ballot. But the Constitution provides no authority for federal courts to prescribe such a course.

*Lopez Torrez*, 552 U.S. at 208.

Reversal of the district court's order is necessary to preserve the integrity of elections and the democratic process.

## IV.   CCDC HAS A RIGHT TO APPEAL THE DISTRICT COURT'S ORDER GRANTING THE INJUNCTION.

Plaintiffs' argument that CCDC is a non-state actor that has no right to appeal the injunction is erroneous. CCDC appealed an order enjoining the implementation of New Jersey's bracketing statutes. The statutes provide political parties with rights, including the right to endorse candidates on the ballot. The order enjoining the drawing of the ballot in accordance with the bracketing statutes, as applied to CCDC, impairs the associational rights of CCDC to identify candidates that have obtained the party endorsement on the primary ballot.

"An intervenor's right to continue a suit in the absence of the party on whose side intervention was permitted is contingent upon a showing by the intervenor that

he fulfills the requirements of Article III of the Federal Constitution." *See Seneca Res. Corp. v. Twp. of Highland*, 863 F.3d 245, 258 n.10 (3d Cir. 2017) (citing *Diamond v. Charles*, 476 U.S. 54, 68 (1986)); *see also McLaughlin v. Pernsley*, 876 F.2d 308, 313 (3d Cir. 1989); *Chadwick v. Janecka*, 302 F.3d 107, 112 (3d Cir. 2002). Under Article III of the United States Constitution, the judicial power extends only to "Cases" and "Controversies." *See Chadwick v. Janecka*, 302 F.3d 107, 112 (3d Cir. 2002). As noted in *Diamond:*

> Article III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, that the injury fairly can be traced to the challenged action, and is likely to be redressed by a favorable decision.

476 U.S. 54, 70 (1986) (internal citations omitted).

Here, the CCDC has established standing under Article III by demonstrating that (1) its constitutionally-protected right to associate with other protected candidates that share similar ideologies as CCDC; (2) is infringed upon by the preliminary injunction that impairs CCDC's ability to identify the individuals that constitute its association; and (3) the preliminary injunction infringing upon CCDC's constitutional right can clearly be redressed on appeal. Thus, CCDC has fulfilled the requirements set forth in Article III and has standing to appeal the district court's order granting Plaintiffs' motion for preliminary injunction.

New Jersey state statutes provide political parties with certain rights, including the right to endorse candidates for nomination on the ballot.

N.J.S.A. 19:1-1 defines "political party" as "a party which, at the election held for all of the members of the General Assembly next preceding the holding of any primary election held pursuant to this Title, polled for members of the General Assembly at least 10% of the total vote cast in this State."  "Primary election for the general election" is defined as "the procedure whereby the members of a political party in this State or any political subdivision thereof nominate candidates to be voted for at general elections, or elect persons to fill party offices." *Id.*  Certain powers are delegated to political parties under statute, including the power to nominate candidates at primaries.  Under N.J.S.A. 19:5-1, "[A] political party may nominate candidates for public office at primary elections . . . ; except that no political party which fails to poll at any primary election for a general election at least ten per centum (10%) of the votes cast in the State for members of the General Assembly at the next preceding general election . . . , shall be entitled to have a party column on the official ballot[.]"

Political parties are also delegated the authority under state statute to establish and adopt a constitution and bylaws.  *See* N.J.S.A. 19:5-3.2 ("[T]he members of the county committee of a political party shall adopt a constitution and bylaws, ensuring fundamental fairness and the rights of the members of the county committee in the

governance of the county party."). Political parties are permitted to designate on the primary ballot their endorsement of candidates. See N.J.S.A. 19:23-17 ("[A]ny person indorsed as a candidate for nomination for any public office or party position whose name is to be voted for on the primary ticket of any political party, may, . . . request that there be printed opposite his name on the primary ticket a designation[.]"). The statutes permit the grouping of candidates stating, "several candidates for nomination to the same office may in such petitions request that their names be grouped together, and that the common designation to be named by them shall be printed opposite their names." N.J.S.A. 19:23-18.

CCDC has the statutorily-authorized right to endorse and freely associate with candidates in the primary election. Plaintiffs' argument that CCDC lacks standing to challenge the district court's imposition of an injunction ignores CCDC's constitutionally-protected associational rights under the First Amendment. While the district court's injunction does not compel or enjoin action by CCDC, it has the effect of violating CCDC's freedom of association and its statutorily-authorized right to endorse candidates on the ballot. The fact that Defendant County Clerks have different interests that are allegedly no longer harmed is irrelevant and does not diminishes CCDC's right to seek redress for the constitutional harms as a result of the district court's injunction. CCDC has a right to appeal the injunction to preserve its constitutional rights protected by the First Amendment.

## CONCLUSION

For the foregoing reasons, CCDC respectfully submits that the District Court's decision should be reversed.

Respectfully submitted,

**BROWN & CONNERY, LLP**
*Attorneys for Appellant,*
*Camden County Democratic Committee*

Dated: April 10, 2024          By:  *s/ William M. Tambussi*
                              William M. Tambussi, Esq.
                              (NJ ID No. 031431983)
                              Alyssa I. Lott, Esq.
                              (NJ ID No. 324182020)
                              360 Haddon Avenue
                              Westmont, New Jersey 08108
                              Phone: (856) 854-8900
                              Fax: (856) 858-4967
                              Email: wtambussi@brownconnery.com
                              Email: alott@brownconnery.com

## <u>CERTIFICATE OF BAR MEMBERSHIP</u>

Pursuant to Third Circuit L. App. R. 46.1(e), I hereby certify that I am a member of the Bar of the United States Court of Appeals for the Third Circuit.

**BROWN & CONNERY, LLP**
*Attorneys for Appellant,*
*Camden County Democratic Committee*

Dated:  April 10, 2024          By: s/ *William M. Tambussi*

William M. Tambussi, Esq.
Alyssa I. Lott, Esq.
360 Haddon Avenue
Westmont, New Jersey 08108
Phone: (856) 854-8900
Fax: (856) 858-4967
Email: wtambussi@brownconnery.com
Email: alott@brownconnery.com

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(g), I hereby certify that the foregoing Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) in that it contains 5,092 words of text in Times New Roman, 14-point font, excluding the parts of the Brief exempted from the type-volume limitation by Fed. R. App. P. 32(f).

Pursuant to Third Circuit L. App. R. 31.1(c), I hereby certify that the text of the electronic version of the foregoing Brief is identical to the text in the paper copies of the Brief.

Pursuant to Third Circuit L. App. R. 31.1(c), I hereby certify that a virus detection program, SentinelOne, Version 23.2.3.358, has been run on the electronic version of the Brief and that no virus was detected.

**BROWN & CONNERY, LLP**
*Attorneys for Appellant,*
*Camden County Democratic Committee*

Dated: April 10, 2024      By: *s/ William M. Tambussi*
            William M. Tambussi, Esq.
            Alyssa I. Lott, Esq.
            360 Haddon Avenue
            Westmont, New Jersey 08108
            Phone: (856) 854-8900
            Fax: (856) 858-4967
            Email: wtambussi@brownconnery.com
            Email: alott@brownconnery.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2024, I caused a copy of the foregoing Reply Brief of Appellant, Camden County Democratic Committee, to be filed electronically with the Clerk of the United States Court of Appeals for the Third Circuit via the CM/ECF system and simultaneously served on all parties to this appeal.

**BROWN & CONNERY, LLP**
*Attorneys for Appellant,*
*Camden County Democratic Committee*

Dated:  April 10, 2024          By:  s/ *William M. Tambussi*
                                       William M. Tambussi, Esq.
                                       Alyssa I. Lott, Esq.
                                       360 Haddon Avenue
                                       Westmont, New Jersey 08108
                                       Phone: (856) 854-8900
                                       Fax: (856) 858-4967
                                       Email: wtambussi@brownconnery.com
                                       Email: alott@brownconnery.com